UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

HAROLD L. HAYGOOD,

                          Plaintiff,

          -vs-                              **No. 6:14-CV-6474(MAT)**
                                            **DECISION AND ORDER**
UNITY HEALTH SYSTEM, d/b/a
ACM MEDICAL LABORATORY, INC.,
and DAWN CRUZ, Homebound Services
Supervisor,

                          Defendants.

———————————————————————

## I.   Introduction

Represented by counsel, Harold L. Haygood ("Plaintiff") instituted this action, alleging that his former employer, ACM Medical Laboratory, Inc. ("ACM"), and his supervisor at ACM, Dawn Cruz ("Cruz") (collectively, "Defendants") discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1981, 42 U.S.C. § 1981 ("Section 1981"); and the Human Rights Law of New York State, New York Executive Law § 296 ("the HRL").

## II.  Background

The following facts are drawn from the Complaint ("Compl.") [#1] and are assumed to be true for purposes of this Decision and Order only.

### A.    Plaintiff's Employment

On July 11, 2011, Plaintiff, an African-American male, began his employment with ACM as a Patient Services Senior Receptionist. On August 31, 2011, he was promoted to a Homebound Services Scheduling Specialist. Cruz, a Caucasian female, served as one of the Plaintiff's supervisors. On or about August 31, 2011, during a training meeting relating to the Plaintiff's new position, Cruz stated, "'I thought your black ass didn't want to be here[.]'" Compl. ¶ 18. Plaintiff also states that he "witnessed, or overheard, on numerous occasions," Cruz make "racially motivated comments or remarks about, among others, the Defendant ACM's African/black Road Techs[.]" Compl. ¶ 22. For instance, Plaintiff "witnessed or overheard" Cruz say that a female coworker was a "black bitch" and that "some black people will never get it". Id.

On July 19, 2013, Plaintiff took a leave of absence pursuant to the Family Medical Leave Act ("FMLA". On July 31, 2013, while on FMLA leave the Plaintiff contacted Associate Human Resource Director, Diane Wilson ("Wilson"), and "reported racial discrimination and harassment which he witnessed, or overheard, by Supervisor Cruz, directed at, among others, some of the Defendant ACM's African/black Road Techs." Id. ¶ 21.

After Plaintiff returned from leave on September 16, 2013, Cruz "became more hostile[,]" id. ¶ 24, and he overheard her refer to him as a "dumb nigga" after he had asked her for computer-

-2-

related assistance. Id. ¶ 25. Later on, Cruz said to Plaintiff, "[t]he next time you're [sic] stupid black ass goes to human resource [sic] . . . ." Id. ¶ 26. Plaintiff believed that Cruz was threatening him with termination if he complained to Wilson again.

On September 17, 2013, Cruz said to Plaintiff, "[k]nock that shit off or you're going to be fired". Plaintiff believed Cruz to be referring to the complaint he made to Wilson about Cruz. Later that same day, Supervisor Cruz stated to the Plaintiff that "black people will never learn[.]" Id. ¶ 28.

On September 18, 2013, Plaintiff turned in his company cell phone and identification and signed a letter of resignation.

### B. Proceedings at the State Level

On October 11, 2013, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") asserting that he had been complained about being subjected to a hostile work environment in July 2013, and was terminated in retaliation for doing so. This claim ("Charge 1") was dismissed because the EEOC was unable to conclude that the information obtained during its investigation established a violation of any civil rights law. The EEOC issued a right-to-sue letter on January 30, 2014.

Also on October 11, 2013, Plaintiff filed a complaint with the New York State Division of Human Rights ("the SDHR") based upon the same allegations in Charge 1. The SDHR dual-filed the complaint ("Charge 2") with the EEOC. In the course of its investigation, the

SDHR reviewed Plaintiff's complaint and obtained the following documents: a position statement from ACM dated November 14, 2013, with fourteen exhibits; two rebuttal statements from Plaintiff; and supplemental submissions from both parties with additional exhibits and CD copies of recorded conversations between Plaintiff and ACM employees. On December 20, 2013, the SDHR investigator Human Rights Specialist II, Kalam Muttalib ("Inv. Muttalib") conducted a Two-Party Fact-Finding Conference. Plaintiff appeared pro se and testified. Other witnesses included Cruz, Wilson, Cruz's supervisor, and ACM's Human Resources Director.

Following the Fact-Finding Conference, Inv. Muttalib concluded that there was no probable cause to support Charge 1 and issued a Final Investigation Report ("the FIR") (Defendants' Exhibit ("Defs. Ex.") 11). The FIR was reviewed and adopted by the SDHR Regional Director, who issued a Determination and Order on April 14, 2014, dismissing Charge 1 in its entirety. Following the SDHR's action on Charge 1, the EEOC adopted the SDHR's findings and dismissed Charge EEOC 2. Plaintiff was issued a second right to sue letter on May 20, 2014.

### C.   The Federal Action

Plaintiff filed his six-count Complaint in this Court on August 13, 2014. Presently before the Court is Defendants' Motion to Dismiss [#3] the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff filed a Memorandum of

Law in Opposition ("Pl's Mem.") [#7], and Defendants filed a Reply [#8]. For the reasons discussed below, Defendants' motion is granted in its entirety, and the Complaint is dismissed with prejudice.

## III. Discussion

### A.    Individual Liability of Cruz Under Title VII and the HRL

Plaintiff did not respond to Defendants' arguments concerning Cruz's individual liability under Title VII and the HRL. Therefore, the Court deems these claims alleging individual liability on the part of Cruz to be abandoned. See, e.g., Rizzo-Puccio v. College Auxiliary Servs., Inc., 216 F.3d 1073 (2d Cir. 2000) (claims not addressed in opposition to defendants' motion for summary judgment were deemed abandoned). Counts III and IV, alleging violations of Title VII (hostile work environment and retaliation, respectively), are dismissed as abandoned as against Cruz. Counts V and VI, alleging violations of the HRL (hostile work environment and retaliation, respectively), likewise are dismissed as abandoned as against Cruz.

### B.    Timeliness of the Title VII Claims Against ACM

#### 1.    Limitations Period in 42 U.S.C. § 2000e-5(f)(1) (Defendants' Point I)

Defendants argue that Plaintiff's Title VII claims must be dismissed because the 90-day statute of limitations prescribed by 42 U.S.C. § 2000e-5(f)(1) expired prior to the filing of the

Complaint. An affirmative defense based on a claim being barred by the applicable statute of limitations "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.") (citations omitted).

In order to pursue a Title VII claim in federal court, a plaintiff generally must comply with the limitations period in 42 U.S.C. § 2000e5(f)(1)):

> If a charge filed with the [EEOC] . . . is dismissed by the [EEOC], . . . the [EEOC], . . . shall so notify the person aggrieved and *within ninety days after the giving of such notice a civil action* may be brought against the respondent named in the charge.

42 U.S.C. § 2000e-5(f)(1) (emphasis supplied). The phrase "after the giving of such notice" in Section 2000e-5(f)(1) consistently has been interpreted to mean that the limitations period runs from the time that the plaintiff receives his right-to-sue letter. See, e.g., Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994) ("[A] suit must be commenced not more than 90 days after receipt of the right-to-sue letter.").

Where an employee files serial EEOC charges presenting identical allegations, he must commence an action within 90 days of

his receipt of the *first* EEOC right-to-sue letter. See <u>Lo v. Pan Am. World Airways, Inc.</u>, 787 F.2d 827, 828 (2d Cir. 1986) (<u>per curiam</u>) (plaintiff's failure to bring action within 90 days of first right-to-sue letter precluded action brought within 90 days of second right-to-sue letter which was based upon charge involving the same facts as first notice; otherwise, 90-day time limit would be meaningless).Here, Plaintiff filed two identical charges with the EEOC. <u>See</u> Affidavit of Daniel Moore ("Moore Aff.") [#3] ¶¶ 18-19, 23 & Defs. Exs. 2, 4. The EEOC issued its first right-to-sue letter ("Letter 1") with respect to the Charge 1 on January 30, 2014. <u>Id.</u> ¶ 21 & Defs. Ex. 3. When a government agency such as the EEOC mails a notice, there is a presumption that it was mailed on the date shown on the document, and a plaintiff is presumed to have received a right to sue letter three (3) days after the date of its mailing. <u>Sherlock v. Montefiore Med. Ctr.</u>, 84 F.2d 522, 525-26 (2d Cir. 1996). Three days from January 30, 2014, is Sunday, February 2, 2014. Absent any contrary evidence, the Court will presume that Plaintiff received the First Letter on Monday, February 3, 2014. <u>See</u> Fed. R. Civ. P. 6(e). Accordingly, Plaintiff's time to file suit expired 90 days later on Sunday, May 4, 2014. However, Plaintiff did not commence this action until August 13, 2014, 101 days after the expiration of the limitations period on May 4, 2014.

### 2.   Equitable Tolling

The time limitations in Title VII for filing with the EEOC are not jurisdictional and are subject to "waiver, estoppel, and equitable tolling." <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982). Plaintiff concedes that he did not file his Complaint in a timely fashion, <u>see</u> Haygood Decl. ¶¶ 15-16, but argues that he is entitled to equitable tolling because he received "inadequate notice" of his rights from the EEOC. Plaintiff cites the "Dismissal and Notice of Rights," <u>see</u> <u>id.</u> ¶ 14, as being unclear.

After examining the EEOC's right to sue letter, it is apparent to the Court that it provided adequate notice to Plaintiff of his rights. The letter instructed Plaintiff that any lawsuit he wished to file "under federal law . . . **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost**." Ex. 3 to Moore Aff. (emphasis in original). The Court agrees with Defendants that the letter "conspicuously advised" Plaintiff of the 90-day filing requirement and the consequences of failing to comply with it. Plaintiff's reliance on <u>Gates v. Georgia-Pacific Corp.</u>, 492 F.2d 292 (9th Cir. 1974), is misplaced. In that case, the EEOC's letter sent to the employee did not advise her of the applicable limitations period for filing her federal lawsuit. <u>See</u> <u>id.</u> at 295 ("While this letter informed appellee that the Commission was closing her case for lack of

-8-

jurisdiction, it did not advise her that she could commence an action in the District Court within 30 days. In neglecting to so advise appellee, the Commission failed to comply with Section 1601.25 of its own regulations."). Here, as noted above, Plaintiff concedes having received the right-to-sue letter, which informed him of the 90-day deadline and cautioned him that his right to sue based on the allegations in the EEOC charge would be forfeited for failing to timely file in federal court.

Plaintiff also asserts entitlement to equitable tolling because "Linda", an alleged employee with the SDHR, provided him with incorrect information. See Haygood Decl. ¶¶ 15-16. Defendants argue that this uncorroborated allegation is too vague to qualify for tolling. The Court agrees. See, e.g., Stephens v. Salvation Army, No. 04 Civ. 1697(NKF), 2006 WL 2788245, at *3 (S.D.N.Y. Sept. 26, 2009) (rejecting as "vague and uncorroborated" plaintiff's factual assertions that complaint was untimely because "incorrect information [was] provided to him by the unidentified pro se clerk concerning the impact that weekends and holidays would have on the calculation of the statutory 90-day filing period"), aff'd, 313 F. App'x 421 (2d Cir. 2009) (finding plaintiff's claims "meritless for substantially the reasons stated by the District Court"). Indeed, the record before the Court is devoid facts that show that Plaintiff was subjected to rare, exceptional or extraordinary circumstances that require invocation of equitable

tolling. Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (stating that "equitable tolling is only appropriate 'in [ ] rare and exceptional circumstance[s],' in which a party is 'prevented in some extraordinary way from exercising his rights[.]") (internal quotations and citations omitted; alterations in original).

In sum, the Court finds that Plaintiff's Title VII claims are untimely, and that he is not entitled to equitable tolling. Accordingly, the Court dismisses with prejudice Count III, which alleges a hostile work environment claim under Title VII against ACM only, and Count IV, which alleges retaliation under Title VII against ACM only. Based on this ruling, the Court need not consider Defendants' alternative arguments in Point IV of their brief that Plaintiff has failed to state a plausible claim for relief and that these causes of action must be dismissed pursuant to Rule 12(b)(6).

**B.   Lack of Subject Matter Jurisdiction over HRL Claims (Defendants' Point II)**

Defendants argue that Plaintiff's filing of a charge with the SDHR deprives this Court of subject matter jurisdiction over Plaintiff's claims brought pursuant to the HRL. Courts in this Circuit have held that New York Executive Law ("Exec. Law") § 297(9) generally provides a jurisdictional bar to judicial resolution once a plaintiff has brought his state-law discrimination claim before the SDHR. See, e.g., Harrison v. New York City Off-Track Betting Corp., 107 F. Supp.2d 455, 457-58

(S.D.N.Y. 2000) (dismissing claims under the state and municipal human rights laws based on plaintiff's election of remedies under present version of Exec. Law § 297 where SDHR made finding of no probable cause). This bar to suit is jurisdictional. <u>Moodie v. Federal Reserve Bank of N.Y.</u>, 58 F.3d 879, 883-84 (2d Cir. 1995).

Plaintiff does not address Defendants' argument regarding Exec. Law § 297(9)'s preclusive effect on his HRL claims. Plaintiff's HRL claims therefore are deemed abandoned. <u>See</u>, <u>e.g.</u>, <u>Dineen v. Stramka</u>, 228 F. Supp.2d 447, 454 (S.D.N.Y. 2002) (finding that plaintiff's failure to address claims in opposition papers "enabl[es] the Court to conclude that [plaintiff] has abandoned them"). Accordingly, the Court dismisses with prejudice Count V alleging a hostile work environment claim under the HRL against all Defendants as well as Count VI alleging retaliation under the HRL against all Defendants.

**C.   Claim Preclusion and Issue Preclusion With Regard to Section 1981 Claims (Defendants' Point III)**

Defendants argue that Plaintiff's § 1981 claims are barred by the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) based on the SDHR's prior determination of "no probable cause" regarding those claims. Plaintiff argues that res judicata is inapplicable because he was not afforded a full opportunity to establish Cruz's liability. <u>See</u> Pl's Mem. at 5. However, Plaintiff does not argue that he was denied a full

opportunity to establish ACM's liability.  Plaintiff further argues
that res judicata does not apply because he now seeks damages that
were unavailable in the SDHR proceeding. With regard to collateral
estoppel, Plaintiff asserts that this doctrine does not apply
because he was "never afforded a full opportunity to present his
contentions" to the SDHR. Pl's Mem. at 8.

As an initial matter, the Court notes that the documents filed
with the EEOC and the records of the SDHR proceeding, upon which
both Defendants and Plaintiff rely in making their res judicata and
collateral estoppel arguments, are properly considered on this
motion to dismiss. See, e.g., Evans v. New York Botanical Garden,
No. 02 Civ.3591 RWS,  2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4,
2002) (on motion to dismiss, finding it appropriate to consider
records filed and produced during plaintiff's SDHR proceeding;
these exhibits all were public records of an administrative body,
of which judicial notice could be taken without converting motion
into one for summary judgment) (citing, inter alia, Mack v. South
Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986) ("[A] court
may take judicial notice of 'records and reports of administrative
bodies.'"'), overruled on other grounds, Astoria Fed. Sav. & Loan
Ass'n v. Solimino, 501 U.S. 104, 111 (1991)).

Under the doctrine of collateral estoppel, relitigation of
issues identical to those raised and necessarily decided in a prior
proceeding on a different claim is precluded. See, e.g., Ryan v.

-12-

New York Tel. Co., 62 N.Y.2d 494, 500 (1984). The Supreme Court has held that when a state agency "'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,'" University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) (quotation omitted; ellipsis in original)), "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. (footnote omitted).[1] As a matter of State law, New York State courts will award the quasi-judicial determinations of administrative agencies such as the SDHR preclusive effect "when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." Ryan, 62 N.Y.2d at 499 (citations omitted). Defendants, as proponents of collateral estoppel, bear the burden of demonstrating "the identicality and decisiveness of the issue." Id. at 501 (citations omitted).

Plaintiff here confines his argument to the "full opportunity" element of the collateral estoppel test, see Pl's Mem. at 8-9, and does not argue that "identicality and decisiveness" of the issues are lacking. Arguably, then, Plaintiff has conceded the point. See,

---

[1] "The holding in Elliott[, 478 U.S. 788] as to the preclusive effect of administrative rulings specifically applied to an action brought under . . . 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988[.]" DeCintio v. Westchester County Medical Ctr., 821 F.2d 111, 118 n. 3 (2d Cir. 1987) (citation omitted).

e.g., Iannuzzi v. American Mortg. Network, Inc., 727 F. Supp.2d 125, 139 & n. 19 (E.D.N.Y. 2010) ("[P]laintiffs do not respond in their papers to defendants' argument that Dawson was not an agent of CCC and, therefore, that no duty of Dawson's could be imputed to CCC. Thus, any breach of fiduciary duty claim against CCC based on this theory is deemed to be abandoned and/or withdrawn.") (collecting cases). Even were Plaintiff to contest these elements, the record negates such a challenge because the present claims of discrimination and retaliation are the same as those which were considered by the SDHR. The critical issues before the SDHR, as here, were whether Plaintiff was constructively discharged due to ACM's and Cruz's creation of a hostile work environment and whether Plaintiff was retaliated against for complaining about workplace discrimination. The hostile work environment and retaliation issues underlying the present Section 1981 claims "are identical to those actually determined by the SDHR[2] and essential to its determination of no probable cause." Mendoza v. SSC & B Lintas, N.Y., 799 F. Supp. 1502, 1510-11 (S.D.N.Y. 1992) (footnote omitted).

Plaintiff also does not contest that SDHR was acting pursuant to its "adjudicatory authority" and employed "procedures

---

[2]

Following its investigation into Plaintiff's charge, the SDHR made a number of findings, which compelled its conclusion that there was no probable cause to believe that Defendants engaged in unlawful discriminatory practices. Among other things, the SDHR found that Plaintiff voluntarily resigned from his position; that he had gotten along well with Cruz and had never complained about race discrimination at ACM until after his resignation; and that he was not subjected to pervasive and persistent hostile working conditions during his time at ACM. See Mendoza, 79 F. Supp at 1510 n.4.

substantially similar to those used in a court of law." <u>Ryan</u>, 62 N.Y.2d at 499. Courts in this Circuit have held that the SDHR "procedures satisfy the requirements that its investigation be pursuant to the adjudicatory authority and that there be a 'substantial similarity to those used in a court of law.'" <u>Evans</u>, 2002 WL 31002814, at *5 (citing <u>Mendoza</u>, 799 F. Supp. at 1510 & n. 5; <u>Ibrahim v. New York State Dep't of Health</u>, 692 F. Supp. 1471, 1473 (E.D.N.Y. 1988)). Defendants therefore have met their burden under the collateral estoppel analysis.

Plaintiff, as the opponent of collateral estoppel, bears the burden of establishing "the absence of a full and fair opportunity to litigate the issue in prior action or proceeding." <u>Ryan</u>, 62 N.Y.2d at 501. Whether a SDHR proceeding that has not been reviewed by a state court provided the requisite "full and fair opportunity" involves consideration of several factors, including "the nature of the forum; the importance of the issue in the prior proceeding; the incentive and initiative to litigate the issue and the actual extent of such litigation; the competence and expertise of counsel; the availability of new evidence; and the foreseeability of future litigation." <u>Schweizer v. Mulvehill</u>, 93 F. Supp.2d 376, 390 (S.D.N.Y. 2000) (citing <u>Gilberg v. Barbieri</u>, 53 N.Y.2d 285, 292 (1981); other citations omitted). Plaintiff asserts that he was denied such an opportunity because (1) he was <u>pro se</u>; (2) discovery before the SDHR "was significantly limited"

to "document production" and a hearing; (3) he lacked an opportunity to submit interrogatories, depose witnesses, or cross-examine ACM's witnesses; and (4) SDHR did not question any of the "ten individuals listed in his charge" who allegedly would have supported his hostile work environment claim.

While Plaintiff's <u>pro se</u> status before the SDHR weighs in his favor, it is not dispositive, for lack of counsel in a prior proceeding "does not impugn the process he received before the SDHR." <u>Mendoza</u>, 799 F. Supp. at 1511 (citing <u>DeCintio</u>, 821 F.2d at 116). The Second Circuit has observed that "[t]he SDHR does not make a probable cause determination until the complainant has had 'full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony.'" <u>DeCintio</u>, 821 F. 2d at 117 (quotation omitted)). Even assuming that it was clear that Plaintiff wanted Inv. Muttalib to call the unnamed ten witnesses in his EEOC charge, the failure to do so does not render his opportunity to litigate less than "full",[3] especially where Plaintiff has not identified how these individuals

---

[3]

See <u>Mendoza</u>, 799 F. Supp. at 1511 (SDHR investigator's failure to subpoena two witnesses was "not fatal") (citing <u>Kirkland</u>, 828 F.2d at 108-09 (finding full and fair opportunity where SDHR received sworn statements on complainant's behalf, took testimony from him while he was accompanied by counsel, contacted a number of his suggested witnesses, and received portions of depositions and trial transcripts from his federal lawsuits); <u>Ward v. Harte</u>, 794 F. Supp. 109, 117 (S.D.N.Y. 1992)).

would have helped him substantiate his charge of discrimination. The remaining relevant factors lead this Court to conclude that Plaintiff received a full and fair opportunity to litigate his claims. First, Plaintiff downplays significantly the extent of discovery conducted during the SDHR proceeding. The "document production" comprised a position statement from ACM with fourteen exhibits; two rebuttal statements from Plaintiff; supplemental submissions from both parties with additional exhibits; and CD copies of tape-recorded conversations between Plaintiff and ACM employees. See Exs. 6-9 to Moore Aff. Plaintiff's assertion that he was denied the opportunity to testify about his retaliation claim at the SDHR's two-party fact-finding conference is belied by the record.[4] With regard to the lack of opportunity to confront witnesses, the Second Circuit has rejected the notion that a formal adversarial hearing with the opportunity to cross-examination witnesses is necessary to invoke collateral estoppel. Kirkland v. City of Peekskill, 828 F.2d 104, 107-09 (2d Cir. 1987).

In sum, the Court is unconvinced that Plaintiff has met his burden of "'establishing that he did not have a full and fair

---

[4]     In his FIR, Inv. Muttalib noted that during the fact-finding conference Plaintiff stated that he had complained about Cruz, and "it [was] his belief that the Human Resources Manager related his complaint to Ms. Cruz who began to retaliate against him. . . . [Plaintiff] did not say that his July, 2013 complaint had anything to do with discrimination but, according to respondent, had to do more with gossip and hearsay going on in the workplace. [Plaintiff] did not offer anything to offset the respondent's contention that he voluntarily resided from his position after being questioned about his whereabouts during an FMLA leave in August, 2013." Defs' Ex. 11.

*opportunity* to litigate,'" <u>Ibrahim v. New York State Dept. of Health</u>, 692 F. Supp. 1471, 1473 (E.D.N.Y. 1988) (quoting <u>DeCintio</u>, 821 F.2d at 118; emphasis in original). Plaintiff had the opportunity to present a range of evidence, including documents and tape-recorded conversations, to the SDHR, which conducted a thorough investigation, held a two-party fact-finding conference, and issued a decision detailing its review of the evidence presented and the grounds for its determination that there was no "conclusive evidence that the complainant was discriminated against on the basis of his race or retaliated against because he opposed discrimination in the workplace." Defs' Ex. 11. The Court finds that the procedures that the SDHR employed in Plaintiff's case "were sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired." <u>Allied Chemical v. Niagara Mohawk Power Corp.</u>, 72 N.Y.2d 271, 276-77 (1988).

In sum, the Court finds that the doctrine of collateral estoppel precludes Plaintiff's claims under Section 1981. In light of this ruling, the Court need not consider Defendants' alternative arguments that res judicata bars consideration of these claims and that the Complaint has failed to allege plausible claims for hostile work environment and retaliation under Section 1981. Accordingly, the Court dismisses with prejudice Count I alleging a hostile work environment claim under Section 1981 against all

-18-

Defendants as well as Count II alleging a retaliation claim under Section 1981 against all Defendants.

**V.    Conclusion**

For the reasons discussed above, the Court grants, in full, Defendants' Motion to Dismiss. The Complaint is dismissed in its entirety. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    June 2, 2015
          Rochester, New York

-19-